2009-02692
FILED
October 27, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002180479

**12 PAGES**

Gregory C. Nuti (Cal. Bar No. 151754)
Kevin W. Coleman (Cal. Bar No. 168538)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

John K. Gisleson *(admitted pro hac vice)*
Keith E. Whitson *(admitted pro hav vice)*
SCHNADER HARRISON SEGAL & LEWIS LLP
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for BRADLEY D. SHARP,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>SK Foods, LP, a California limited partnership, et al.<br><br>Debtor. | Case No.: 09-29162<br><br>Chapter 11 |
| BRADLEY D. SHARP, CHAPTER 11 TRUSTEE<br><br>Plaintiff,<br><br>vs.<br><br>SSC FARMS I, LLC, a California limited liability company, and SSC FARMS II, LLC, a California limited liability company, SSC FARMING, LLC, a California limited liability company.<br><br>Defendants. | Adversary Proceeding No.<br><br><br><br><br>**COMPLAINT TO QUIET TITLE, FOR DECLARATORY RELIEF, AND FOR TURNOVER OF PROPERTY OF THE ESTATE** |

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700
FAX: (415) 364-6785

Bradley D. Sharp ("Trustee"), the duly appointed and acting Chapter 11 trustee for the estate of SK Foods, L.P., a California limited partnership, and RHM Industrial/Specialty Foods, Inc., a California Corporation (collectively, "SK Foods" or "Debtors") alleges as follows:

## PARTIES

1.  Bradley D. Sharp is the duly appointed and acting Chapter 11 trustee for the Chapter 11 estate of SK Foods, L.P., a California limited partnership, and RHM Industrial/Specialty Foods, Inc., a California Corporation.

2.  Trustee is informed and believes that SSC Farms I, LLC ("SSC Farms I") is a California limited liability company with a principal place of business at 200 Sky Park Drive, Monterey, California 93940. Its registered agent is Scott Salyer.

3.  Trustee is informed and believes that SSC Farms II, LLC ("SSC Farms II") is a California limited liability company with a principal place of business at 200 Sky Park Drive, Monterey, California 93940. Its registered agent is Scott Salyer.

4.  The Trustee is informed and believes that SSC Farming, LLC ("SSC Farming") is a California limited liability company that according to public records maintains its principal place of business at 1175 S. 19th Avenue, Lemoore, CA 92345. Its registered agent resigned on September 19, 2009, and according to publicly available information, no new registered agent has been designated.

5.  Trustee is informed and believes that Defendants are owned, directly or indirectly, by the Scott Salyer Revocable Trust ("SSR Trust"), the Stefanie Ann Salyer Trust ("SAS Trust"), and the Carolyn Salyer Trust ("CGS Trust") in the following percentages:

    a. SSC Farms I:
    - SSR Trust – 50%
    - SAS Trust – 50%

    b. SSC Farms II:
    - SSR Trust – 50%
    - SAS Trust – 50%

    c. SSC Farming:

- SSR Trust – 60%
- SAS Trust – 20%
- CGS Trust – 20%

6. Stefanie Ann Salyer and Caroline Salyer are Scott Salyer's daughters.

7. Trustee is informed and believes that Scott Salyer is Trustee for the SSR Trust and the SAS Trust.

8. Trustee is informed and believes that Scott Salyer, an entity controlled by him, or those acting at his direction, operates, manages and/or controls SSC Farms I, SSC Farms II, and SSC Farming.

9. Until approximately July 1, 2009, Scott Salyer served as the Debtors' Chief Executive Officer. Scott Salyer and/or entities controlled by him or those acting at his direction, operated, managed and/or controlled SK Foods until May 18, 2009.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core matter pursuant to 11 U.S.C. § 157.

11. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

12. On or about May 7, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (the "Bankruptcy Code").

13. Debtor SK Foods was in the business of processing and readying for shipment tomatoes and other crops. To process the tomatoes, SK Foods generated large quantities of waste water. In order to comply with applicable environmental, health, and safety regulations, SK Foods was required to obtain permits issued by the California Regional Water Quality Control Board authorizing the discharge of waste water onto specific parcels of land. The Trustee is informed and believes and based thereon alleges that the California Regional Water Quality Control Board permitting process ordinarily takes 12 to 24 months to complete.

COMPLAINT TO QUIET TITLE. AND FOR OTHER RELIEF

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700
FAX: (415) 364-6785

14. The ownership and title to the lands upon which SK Foods discharged waste water are the subjects of this Complaint.

### The Westlands Water District Parcels

15. The Trustee is informed and believes and based thereon alleges that prior to 2005, SK Foods discharged its wastewater on a parcel of land that is not the subject of this complaint ("Prior Lemoore Discharge Parcel"). Said parcel was owned by an unrelated third party. The Trustee is further informed and believes and based thereon alleges that SK Foods' agreement with the owner of the Prior Lemoore Discharge Parcel was set to expire in 2006, and that because SK Foods was unwilling to agree to the terms under which the owner of the Prior Lemoore Discharge Parcel would consider a renewal or extension of that contract, SK Foods determined that it was in its best interest to acquire land upon which it could discharge its wastewater. The Trustee is further informed and believes and based thereon alleges that given its importance to SK Foods' operations, SK Foods specifically sought to acquire its own land so that could assure itself of a continuous and reliable means of discharging wastewater, and that would allow it to increase the volume of wastewater discharged in order to accommodate an expected increase in the Lemoore plant's production capacity.

16. On or about May 19, 2005, SK Foods made an offer to purchase several contiguous parcels of land aggregating 2,602.28 acres from the Westlands Water District ("WWD").

17. On or about October 25, 2005, SK Foods and WWD entered into a certain Real Estate Purchase and Sale Agreement and Escrow Instructions (the "Lemoore Wastewater Parcel Agreement"). The Lemoore Wastewater Parcel Agreement identified approximately 30 specific parcels via assessor's parcel identification numbers. A true and correct copy of the Lemoore Wastewater Parcel Agreement and the exhibits thereto are attached hereto as **Exhibit 1**. The specific parcels identified in the Lemoore Wastewater Parcel Agreement that were to be purchased by SK Foods are referred to herein as the "Lemoore Wastewater Parcel."

18. The Lemoore Wastewater Parcel Agreement provides that SK Foods would pay the sum of Four Hundred ($400.00) Dollars per acre for the Lemoore Wastewater

Parcel, or an aggregate sale price of One Million Forty Thousand Nine Hundred-Twelve ($1,040,912.00) Dollars.

19. After October 25, 2005, several amendments were made to the Lemoore Wastewater Parcel Agreement in order to extend the closing date to coincide with the expected issuance of permits from the California Regional Water Quality Review Board. Each such amendment was executed by SK Foods, LP.

20. The closing on the sale of the Lemoore Wastewater Parcel ultimately occurred on or about September 13, 2007.

21. At the closing, title to the Lemoore Wastewater Parcel was *not transferred to SK Foods*. Instead, title to the various parcels of the Lemoore Wastewater Parcel was taken in the names of Defendants SSC Farms I and SSC Farms II. True and correct copies of the grant deeds showing which parcels were allocated to SSC Farms I and SSC Farms II are attached hereto as **Exhibit 2** and **Exhibit 3**, respectively. The parcels of land transferred to SSC Farms I are referred to herein as the "SSC Farms I Waste Water Lands," and the parcels of land transferred to SSC Farms II are referred to herein as the "SSC Farms II Waste Water Lands."

22. No written assignment of the Lemoore Wastewater Parcel Agreement to either SSC Farms I or SSC Farms II was ever executed by Debtor.

23. The Trustee is informed and believes and based thereon alleges that neither SSC Farms I nor SSC Farms II paid any consideration to SK Foods in exchange for the purported assignment of its rights under the Lemoore Wastewater Parcel Agreement.

24. The Trustee is informed and believes and based thereon alleges that SK Foods' SK Foods transferred funds to SSC Farms I, LLC and SSC Farms II, LLC prior to the closing of the purchase of the Lemmore Waste Water Lands, and that some or all of said funds were used by SSC Farms I and SSC Farms II to pay the purchase price for the Lemoore Wastewater Parcel property from Westlands Water District.

25. On or about May 1, 2008, SSC Farms I and SSC Farms II entered into certain agreements entitled "Discharge Agreements" pursuant to which SK Foods was permitted to discharge waste water on the SSC Farms I and SSC Farms II Waste Water Lands. True and

5
COMPLAINT TO QUIET TITLE. AND FOR OTHER RELIEF
PHDATA 3246064_1

correct copies of the Discharge Agreements are attached hereto as **Exhibits 4** and **5**, respectively, and are incorporated herein by this reference.

26. The Discharge Agreements provided that SK Foods would pay SSC Farms I and SSC Farms II an annual base discharge fee equal to Four Hundred ($400.00) Dollars per acre <u>each year</u> for a period of ten (10) years. The Discharge Agreements further provided that the base fee for the discharge of wastewater would increase 15% every three years commencing in 2011. Thus, the Discharge Agreements obligated SK Foods each year to pay a sum equal to the purchase price paid to acquire the portions of the Lemoore Wastewater Parcel upon which wastewater was discharged. Over the expected duration of the Lemoore Discharge Agreements, SK Foods was obligated to pay Defendants SSC Farms I and SSC Farms II over Two Million Six Hundred Twenty Thousand Nine Hundred-Twenty ($2,620,920.00) Dollars, a sum approximately two and one-half times the total purchase price paid for all of the land acquired from WWD, before taking into account the scheduled increases in the discharge fees.

27. The Trustee is informed and believes and based thereon alleges that SK Foods was the ultimate source of the funds used to acquire the Lemoore Wastewater Parcel, and that the Lemoore Discharge Agreements constitute in economic substance vehicles through which SK Foods would pay the entire purchase price and all expenses associated with ownership of the Lemoore Wastewater Parcel.

28. The Trustee is informed and believes and based thereon alleges that Scott Salyer was aware of the significance of the Lemoore Wastewater Parcel to SK Foods, that he was aware of SK Foods contractual right to purchase the Lemoore Wastewater Parcel, and that he was aware that by virtue of the series of transactions described in Paragraphs 15 through 27 that SK Foods' resources alone would be utilized to acquire the Lemoore Wastewater Parcel. By virtue of this knowledge and his position as CEO of SK Foods, Scott Salyer was a fiduciary for SK Foods, and as such, he had a duty to ensure that title to the Lemoore Wastewater Parcel was taken in SK Foods name. Scott Salyer breached his fiduciary obligations to SK Foods by causing or permitting title to the Lemoore Wastewater Parcel to be taken in the names of SSC Farms I and SSC Farms II. Because Scott Salyer owned and controlled SSC Farms I and SSC

Farms II, and SSC Farms I and SSC Farms II were the instruments through which Scott Salyer carried out his breach, SSC Farms I and SSC Farms II should be deemed Scott Salyer's alter egos such that his breach of fiduciary obligations owed to SK Foods should be imputed to SSC Farms I and SSC Farms II. Alternatively, by acting in concert with Scott Salyer to acquire the Lemoore Wastewater Parcel, SSC Farms I and SSC Farms II aided and abetted Scott Salyer's breach of his fiduciary duty to SK Foods.

29. The purported transfer of SK Foods' rights under the Lemoore Waste Water Land Agreements frustrated the essential purpose underlying SK Foods entry into that contract. It created a situation where SSC Farms I and SSC Farms II had the ability to control Debtor's ability to operate. In 2009, SSC Farms I and SSC Farms II ultimately took advantage of this situation by purporting to terminate Debtor's ability to discharge wastewater on those lands.

### The Rogers Parcel

30. On or about April 27, 2005, SS Farms, LLC, another entity affiliated with SK Foods that is owned and controlled by Scott Salyer, entered into a contract for the purchase of 642.81 acres of land in Colusa County with Frank Rogers, Robin Myers, and Lynco Farms ("Rogers Parcel") for the sum of Two Million Nine Hundred Fifty Six Thousand Nine Hundred Twenty-Six ($2,926,926.00) Dollars. The purchase agreement for the Rogers Parcel contemplated that the buyer would pay a $140,000 earnest money deposit, pay an additional $1,530,942.00 prior to the close of escrow, and assume liability for a $1,286,000 note secured by the property. The purchase agreement for the Rogers Parcel provided that escrow would be opened at Placer Title Co. in Yuba City, California.

31. The Trustee is informed and believes that the Rogers Parcel was acquired for the purpose of providing SK Foods with land upon which it could discharge wastewater.

32. The Trustee is informed and believes and based thereon alleges that the initial $140,000 earnest money deposit was paid using funds coming directly or indirectly from SK Foods.

COMPLAINT TO QUIET TITLE. AND FOR OTHER RELIEF
PHDATA 3246064_1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700
FAX: (415) 364-6785

33. On July 6, 2005, SK Foods wired $1.5 million directly from its account at Harris Bank, N.A. to Placer Title Co. with the wire instructions specifically referencing Escrow No. 1201-18075. A true and correct copy of the said wire instructions is attached hereto as **Exhibit 6**, and is incorporated herein by this reference.

34. Escrow closed for the purchase of the Rogers Parcel, and a deed conveying the Rogers Parcel to Defendant SSC Farming, LLC was recorded on July 13, 2005. A true and correct copy of the grant deed conveying the Rogers Parcel to SSC Farming is attached hereto as **Exhibit 7**, and is incorporated herein by this reference. The Trustee is informed and believes and based thereon alleges that Defendant SSC Farming, LLC contributed no consideration toward the purchase of the Rogers Parcel, and that it was not a party to the contract for the purchase of the Rogers Parcel.

35. On or about May 1, 2008, SSC Farming, LLC entered into certain Discharge Agreement pursuant to which SK Foods was permitted to discharge waste water on a 592.2 acre portion of the Rogers Parcel. A true and correct copy of the Rogers Parcel Discharge Agreement is attached hereto as **Exhibit 8**, and is incorporated herein by this reference.

36. The Rogers Parcel Discharge Agreement provided that SK Foods would pay SSC Farming an annual base discharge fee equal to Four Hundred ($400.00) Dollars per acre each year for a period of ten (10) years. The Discharge Agreement further provided that the base fee for the discharge of wastewater would increase 15% every three years commencing in 2011. Over the expected duration of the Rogers Parcel Discharge Agreement, SK Foods would pay Defendant SSC Farming over Two Million Three Hundred Seventy Thousand ($2,370,000.00) Dollars, a sum nearly twice the principle balance of the mortgage SSC Farming assumed on the Rogers Parcel, before taking into account the scheduled increases in the discharge fees.

37. The Trustee is informed and believes and based thereon alleges that SK Foods was the ultimate source of the funds used to acquire the Rogers Parcel, and that the Rogers Parcel Discharge Agreement constitutes in economic substance a vehicle through which SK Foods would pay the entire purchase price and all expenses associated with ownership of the Rogers Parcel.

38. The Trustee is informed and believes and based thereon alleges that Scott Salyer was aware of the significance of the Rogers Parcel to SK Foods' ability to discharge wastewater, and that he was aware that by virtue of the series of transactions described in Paragraphs 30 through 37 SK Foods' resources alone would be utilized to acquire the Rogers Parcel. By virtue of this knowledge and his position as CEO of SK Foods, Scott Salyer was a fiduciary for SK Foods, and as such, he had a duty to ensure that title to the Rogers Parcel was taken in SK Foods name. Scott Salyer breached his fiduciary obligations to SK Foods by causing or permitting title to the Rogers Parcel to be taken in the name of SSC Farming. Because Scott Salyer owned and controlled SSC Farming and SSC Farming was the instrument through which Scott Salyer carried out his breach, SSC Farming should be deemed Scott Salyer's alter ego such that his breach of fiduciary obligations owed to SK Foods should be imputed to SSC Farming. Alternatively, by acting in concert with Scott Salyer to acquire the Rogers Parcel, SSC Farming aided and abetted Scott Salyer's breach of his fiduciary duty to SK Foods.

39. By permitting SSC Farming to take title to the Rogers Parcel created a situation where SSC Farming had the ability to control Debtor's ability to operate despite the fact that SK Foods, rather than SSC Farming, paid for the Rogers Parcel. In 2009, SSC Farming ultimately took advantage of this situation by purporting to terminate Debtor's ability to discharge wastewater on the Rogers Parcel.

### The Tiahart Parcel

40. On March 17, 2005, SS Farms entered into an agreement to purchase a 229.09 acre parcel of real estate located in Colusa County from Elmer and Ronald Tiahrt ("Tiahrt Parcel") for the sum of Six Hundred Ninety-Eight Thousand Seven Hundred Twenty-Five ($698,725.00) Dollars. The purchase agreement for the Tiahrt Parcel contemplated that the buyer would pay a $10,000 earnest money deposit, pay an additional $688,725.00 prior to the close of escrow.

41. The Trustee is informed and believes that the Tiahrt Parcel was acquired for the purpose of providing SK Foods with land upon which it could discharge wastewater.

42. On or about April 28, 2005, SK Foods transferred the sum of $700,000.00 to SS Farms, which funds were subsequently transferred to Placer Title Co. for the purpose of purchasing the Tiahrt Parcel.

43. Escrow closed for the purchase of the Tiahrt Parcel, and a deed conveying the Tiahrt Parcel to Defendant SSC Farming, LLC was recorded on May 5, 2005. A true and correct copy of the grant deed conveying the Tiahrt Parcel to SSC Farming is attached hereto as **Exhibit 9**, and is incorporated herein by this reference. The Trustee is informed and believes and based thereon alleges that Defendant SSC Farming, LLC contributed no consideration toward the purchase of the Rogers Parcel, and that it was not a party to the contract for the purchase of the Tiahrt Parcel.

44. The Trustee is informed and believes and based thereon alleges that Scott Salyer was aware of the significance of the Tiahrt Parcel to SK Foods' ability to discharge wastewater, and that he was aware that by virtue of the series of transactions described in Paragraphs 40 through 43 SK Foods' resources alone would be utilized to acquire the Tiahrt Parcel. By virtue of this knowledge and his position as CEO of SK Foods, Scott Salyer was a fiduciary for SK Foods, and as such, he had a duty to ensure that title to the Tiahrt Parcel was taken in SK Foods name. Scott Salyer breached his fiduciary obligations to SK Foods by causing or permitting title to the Tiahrt Parcel to be taken in the name of SSC Farming. Because Scott Salyer owned and controlled SSC Farming and SSC Farming was the instrument through which Scott Salyer carried out his breach, SSC Farming should be deemed Scott Salyer's alter ego such that his breach of fiduciary obligations owed to SK Foods should be imputed to SSC Farming. Alternatively, by acting in concert with Scott Salyer to acquire the Tiahrt Parcel, SSC Farming aided and abetted Scott Salyer's breach of his fiduciary duty to SK Foods.

## FIRST CLAIM FOR RELIEF
### Quiet Title to the Lemoore Wastewater Parcel, the Rogers Parcel, and the Tiahrt Parcel
### Cal. Code Civ. Proc. §760.020

45. The allegations of Paragraphs 1 through 44 are incorporated and re-alleged as if set forth in full herein.

COMPLAINT TO QUIET TITLE. AND FOR OTHER RELIEF
PHDATA 3246064_1

46. By virtue of providing the consideration for the purchase of the Lemoore Wastewater Parcel, the Rogers Parcel, and the Tiahrt Parcel, SK Foods is the holder of equitable title to said parcels of real property.

47. SK Foods was wrongfully deprived of legal title to the Lemoore Wastewater Parcel, the Rogers Parcel and the Tiahrt Parcel by virtue of Scott Salyer's breach of his fiduciary obligations to SK Foods and the actions of Defendants SSC Farms I, SSC Farms II, and SSC Farming acting in concert with Scott Salyer.

Wherefore, Trustee prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief

48. The allegations of Paragraphs 1 through 47, are incorporated and re-alleged as if set forth in full herein.

49. An actual controversy exists between the Trustee on the one hand, and Defendants SSC Farms I, LLC, SSC Farms II, LLC, and SSC Farming, LLC on the other hand, concerning the true ownership of the Lemoore Wastewater Discharge Parcel, the Rogers Parcel, and the Tiahrt Parcel.

50. Because the Lemoore Wastewater Discharge Parcel, the Rogers Parcel, and the Tiahrt Parcel were acquired for SK Foods' benefit, SK Foods paid the purchase price for said parcels either directly or through its obligations under the Discharge Agreements, and because Defendants acquired their interests in said parcels for no consideration, and SK Foods was deprived of full ownership of said parcels due to the violations of its rights by Defendants and Scott Salyer, including their breach of fiduciary duties owed to SK Foods, SK Foods is entitled to a declaration that it is the true owner of the entire legal and equitable interest in the Lemoore Wastewater Discharge Parcel, the Rogers Parcel, and the Tiahrt Parcel, and therefore, said real property is property of the SK Foods' bankruptcy estates.

Wherefore, Trustee prays for relief as set forth below.

//
//

COMPLAINT TO QUIET TITLE. AND FOR OTHER RELIEF

## THIRD CLAIM FOR RELIEF

### Turnover of Property of the Estate

### Pursuant to 11 U.S.C. §§ 542

51. The allegations of Paragraphs 1 through 50, are incorporated and re-alleged as if set forth in full herein.

52. Defendants are in possession of the Lemoore Wastewater Discharge Parcel, the Rogers Parcel, and the Tiahrt Parcel, which real property constitutes property of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541(a).

53. Defendants are obligated under 11 U.S.C. § 542 to turn over the Lemoore Wastewater Discharge Parcel, the Rogers Parcel, and the Tiahrt Parcel to the Trustee.

Wherefore, Trustee prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Trustee asks this Court for a judgment, as follows:

1. On the First Claim for Relief, for judgment quieting title to the Lemoore Wastewater Parcel, the Rogers Parcel, and the Tiahrt Parcel in the Trustee;

2. On the Second Claim for Relief, for judgment declaring SK Foods to be the true owner and holder of the entire legal and equitable interests in the Lemoore Wastewater Parcel, the Rogers Parcel, and the Tiahrt Parcel;

3. On the Third Claim for Relief, for judgment ordering Defendants to turn over the Lemoore Wastewater Parcel and the Rogers Parcel to the Trustee; and

4. For such other relief as may be just and required, including relief appropriate pursuant to 11 U.S.C. § 105.

Dated: October 23, 2009

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Kevin w. coleman
    Kevin W. Coleman
    Attorneys for Bradley D. Sharp,
    Chapter 11 Trustee